UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES,

      -against-

DIVINE JOHNSON,

                Defendant.

**MEMORANDUM & ORDER**

**16-CR-319 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Divine Johnson brings this *pro se* motion for compassionate release under 18 U.S.C § 3582(c)(1)(A), as amended by the First Step Act of 2018. Johnson contends (1) that the threat of the COVID-19 pandemic combined with his serious medical problems pose extraordinary risks to his health and (2) that his incarceration for the entirety of the pandemic has rendered his sentence overly punitive, constituting extraordinary and compelling circumstances that warrant his early release. For the reasons set forth below, Johnson's motion for compassionate release is GRANTED, and his sentence is reduced to time served plus three years' supervised release.

## I.   BACKGROUND

Divine Johnson was arrested by federal authorities on May 12, 2016, in connection with armed robberies of two commercial establishments—the September 14, 2015 robbery of Hill Country BBQ, a restaurant located at 345 Adams Street in Brooklyn, New York, and the September 20, 2015 robbery of Washington Seafood, a seafood distributor located at 52 Washington Avenue in Brooklyn. (Presentence Investigation Report ("PSR") (Dkt. 35) ¶¶ 5, 6, 8.) On January 24, 2017, Johnson pleaded guilty to one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) and one count of Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (*Id.* ¶¶ 1, 12, 13.)

Johnson was sentenced on October 20, 2017. (10/20/2017 Minute Entry (Dkt. 22).) His PSR calculated a total adjusted offense level of 17 and a criminal history category of III, for a guidelines range of 30 to 37 months of custody on the Hobbs Act robbery count. (PSR ¶ 78.) Johnson also faced a mandatory minimum sentence of 7 years of custody on the brandishing offense. (*Id.* ¶ 79.)[1] These crimes took place against the backdrop of a life of significant hardship. Johnson's mother abused crack cocaine and heroin throughout his childhood and fell victim to an untimely death when Johnson was just 15 years old. (*Id.* ¶¶ 39, 42, 44.) Johnson was diagnosed with post-traumatic stress disorder ("PTSD") in 2011 and meets the criteria for borderline personality disorder. (*Id.* ¶¶ 55-56.) He has a long history of drug addiction and homelessness, throughout his teenage and adult years. (*See id.* ¶¶ 44, 48, 59-64.) This court sentenced Johnson to 30 months' imprisonment for the Hobbs Act robbery, to run consecutively with 84 months' imprisonment for the brandishing offense, followed by three years of supervised release. (Judgment (Dkt. 24) at 2-3.) The court also requested that he be placed in a drug abuse treatment program while incarcerated. (*Id.* at 2.)

Based on the Bureau of Prison's ("BOP") expected release date, Johnson has served over 104 months of his sentence[2] at multiple different correctional facilities, apparently including Elmira Correctional Facility in Elmira, New York, *see Incarcerated Lookup,*

---

[1] The Government appears to concede that Johnson did not himself brandish a weapon during either of the two robberies in which he took part. (Gov't Opp'n to Mot. ("Gov't Opp.") (Dkt. 30) at 1 ("the defendant entered...with a co-conspirator, who brandished a firearm;" "[w]hie the defendant distracted the manager, the co-conspirators confronted the manager and another employee...at gunpoint").)

[2] The BOP cites an expected release date of February 1, 2024. *See Inmate Locator*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Apr. 21, 2023). Working backwards from this date, Johnson has a little over nine months left in his 114-month sentence, meaning that he has served between 104 and 105 months.

New York State, https://nysdoccslookup.doccs.ny.gov/ (last accessed Apr. 21, 2023) ("*Incarcerated Lookup*"); a facility referred to by Johnson as "Allegany Correctional [F]acility," (Mot. For Compassionate Release ("Mot.") (Dkt. 27) at 5); a correctional facility located in Ohio, (*id.* at 1); and the Williamsburg Federal Correctional Institute in Salters, South Carolina. (Gov't Opp'n to Mot. ("Gov't Opp.") (Dkt. 30) at 2); *see also Inmate Locator*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Apr. 21, 2023) ("*Inmate Locator*"). There is some confusion about how many months of Johnson's sentence remain. According to the Government, his estimated release date is February 1, 2024. (Gov't Opp. at 2.) [3] According to Johnson, although there have been "issues" with his "time computation sheet," his estimated release date is October 6, 2023. (Mot. at 4.)

On August 29, 2022, Johnson moved for compassionate release under 18 U.S.C § 3582(c)(1)(A), as amended by the First Step Act of 2018. (*See generally id.*) First, Johnson argues that his serious medical problems—including diabetes, hypertension, and obesity—put him at increased risk from COVID-19, which has caused him to "fear for [his] life" and constitute "extraordinary and compelling reason[s]" for sentence reduction. (*Id.* at 3, 5.) Second, he argues that COVID-19-related restrictions put in place at correctional facilities in which he has been housed—including "lockdowns" and the "curtailment of facility programs and visitation"—have made his term of imprisonment "harsher and more punitive" than anticipated. (*Id.* at 4.) Finally, he points out that he has served the vast majority of his sentence and indicates he has grown as a person, noting that his incarceration has shown him "more of what being a man and father is." (*Id.* at 1, 4.) On

---

[3] The BOP website also lists February 1, 2024 as his estimated release date, but it is not clear to this court how recently the BOP has updated its website and/or whether the BOP website accounts for good time credit or time in state facilities. *See Inmate Locator*.

November 21, 2022, the Government responded in opposition, arguing that Johnson failed to exhaust administrative remedies as required by § 3582(c)(1)(A), failed to demonstrate that the COVID-19 pandemic constituted an extraordinary and compelling reason supporting his release, and the § 3553(a) sentencing factors do not support his release. (*See generally* Gov't Opp.)

On February 2, 2023, the court directed the Government to provide information regarding whether Johnson had received substance abuse treatment during his incarceration, and if so, the nature of such treatment. (2/02/2023 Text Order). The government responded with two letters to the court. As of March 6, 2023, Johnson "ha[d] not yet completed a drug treatment program," notwithstanding the Court's October 2017 recommendation that he be enrolled in one. (Gov't Second Letter on Drug Treatment ("Second Gov't Letter") (Dkt. 33) at 1; Judgment at 2.) Johnson signed up for the Medication-Assisted Treatment (MAT) Program, but seven years after he entered federal custody and nearly six years after this court requested such treatment, the Government reports that he is "still in the screening process to determine his need for MAT treatment." (Second Gov't Letter at 2.) In the meantime, there are indications that Johnson continues to struggle with addiction. (*See* Gov't First Letter on Drug Treatment ("First Gov't Letter") (Dkt. 32) at 1.)

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by the First Step Act of 2018, allows courts to reduce a defendant's sentence upon a motion of either the Director of the BOP or the defendant. 18 U.S.C. § 3582(c)(1)(A). Although often referred to as "compassionate release," this Section actually pertains to sentence reductions of any length, up to and including immediate release. *Reynolds v. United States,* No. 99-CR-520 (NGG), 2022 WL 1444167, at *4 (E.D.N.Y. May 6, 2022); *see also United States v. Brooker,* 976

F.3d 228, 237 (2d Cir. 2020). A district court may reduce a defendant's sentence upon a motion of the defendant where (1) they have exhausted the available BOP administrative remedies; (2) extraordinary and compelling reasons warrant such a reduction; and (3) the applicable § 3553(a) factors weigh in favor of said reduction. § 3582(c)(1)(A).

If the court finds that any of these three conditions is not met, it need not address the others. *United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021). District courts may, however, analyze the remaining factors to aid appellate review. *United States v. Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021). "[D]istrict courts have broad discretion in deciding whether to grant or deny" a § 3582(c)(1)(A) motion. *United States v. Antney*, No. 17-CR-229 (CBA), 2021 WL 4502478, at *1 (E.D.N.Y. Sept. 20, 2021) (citing *Brooker*, 976 F.3d at 237).[4] The court discusses administrative exhaustion and the two substantive requirements in turn below.

### A. Exhaustion of Administrative Remedies

#### 1. Legal Framework

A defendant may bring a motion pursuant to § 3582(c)(1)(A) "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). "[A] defendant seeking compassionate release *should include evidence of compliance* with the First Step Act's mandatory administrative exhaustion requirement," such as documentation of the request submission with

---

[4] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

their motion. *United States v. Friedlander*, No. 20-CR-441 (JS),
2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022).

The Second Circuit has held that the administrative exhaustion
requirement of § 3582(c)(1)(A) is a mandatory "claim-pro-
cessing rule," rather than a "jurisdictional limitation," with the
result that exhaustion may be "waived or forfeited by the govern-
ment." *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021).
It has not explicitly decided whether the administrative exhaus-
tion requirement of § 3582(c)(1)(A) is waivable by courts, but it
has articulated three situations in which exhaustion require-
ments under other statutes are so waivable. *See Washington v.
Barr*, 925 F.3d 109, 118-19 (2d Cir. 2019). Several district courts
within the Circuit have waived § 3582(c)(1)(A)'s exhaustion re-
quirement in contexts where exhaustion would be futile,
incapable of granting adequate relief, or would result in undue
prejudice, applying *Washington v. Barr* to the compassionate re-
lease context. *See, e.g., United States v. Fragoso*, No. 18-CR-179
(JMA), 2021 WL 5205633, at *2 (E.D.N.Y. Nov. 9, 2021) (recog-
nizing the three types of *Washington v. Barr* waivers as applicable
to § 3582(c)(1)(A)); *United States v. Sawicz*, 453 F. Supp. 3d 601,
604 (E.D.N.Y. 2020) (holding that a COVID-19 outbreak at de-
fendant's facility combined with defendant's high risk of suffering
severe complications from the virus justified waiver under *Wash-
ington v. Barr*); *United States v. Zukerman*, 451 F. Supp. 3d 329,
333-34 (S.D.N.Y. 2020) (excusing exhaustion on the basis of fu-
tility, prejudice, and the inadequacy of administrative relief);
*United States v. Perez*, 451 F. Supp. 3d 288, 291-93 (S.D.N.Y.
2020) (same); *United States v. Colvin*, 451 F. Supp. 3d 237, 239-
40 (D. Conn. 2020) (same).

2.   Application

a.   *Johnson does not appear to have exhausted his administrative remedies*

Johnson notes in his motion that he is "reaching out to the BOP and the [c]ourts for judicial intervention." (Mot. at 5.) The court is sympathetic to the fact that in so doing, Johnson appears to have thought he was following the correct procedure. Further, Johnson has been moved from facility to facility, including in the past year,[5] which likely made it more difficult to properly request assistance within the BOP. Nevertheless, courts in this Circuit have held that a defendant's statement attesting to exhaustion, on its own, is insufficient to satisfy this requirement.[6] And, in contrast to Johnson's assertion, the Government states that "the BOP has no record of the defendant applying for compassionate release as of . . . the date he filed his motion." (Gov't Opp. at 4.)

---

[5] Johnson appears to, at the very least, have been incarcerated at (1) Elmira Correctional Facility in Elmira, New York, *see Incarcerated Lookup*; (2) a facility Johnson refers to as "Allegany Correctional [F]acility," (Mot. at 5); (3) an unknown facility referenced in his motion located in Ohio, (*id.* at 1); and (4) the Williamsburg Federal Correctional Institute in Salters, South Carolina. (Gov't Opp. at 2; *Inmate Locator*.

[6] *See, e.g., United States v. Daley*, No. 89-CR-229-15 (JS), 2021 WL 327620, at *1 (E.D.N.Y. Feb. 1, 2021) (denying a motion for compassionate release under § 3582(c)(1)(A) because "[a]part from Defendant's uncorroborated representation, there is no evidence that Defendant made his compassionate release request to the warden, or otherwise began the process of seeking administrative relief, as is statutorily required"); *United States v. Sosa*, No. 18-CR-229 (VM), 2020 WL 4252683, at *1 (S.D.N.Y. July 25, 2020) (noting that the defendant, who claimed to have made a request with the Warden of his facility, may "renew his [m]otion if he attaches documentation proving his satisfaction of the exhaustion requirements"); *United States v. Bolino*, No. 06-CR-806 (BMC), 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020) (suggesting that sufficient proof that the administrative exhaustion requirement has been met might include "the warden's denial, proof of an appeal, or the BOP's final agency action," rather than the defendant's representation of exhaustion).

   b.   *Johnson is eligible for a waiver of administrative*
        *exhaustion under Washington v. Barr*

This court elects to join numerous other district courts within this
Circuit in finding that *Washington v. Barr* applies in the compas-
sionate release context. *See, e.g., Fragoso,* 2021 WL 5205633, at
*2; *Sawicz,* 453 F. Supp. at 604; *Zukerman,* 451 F. Supp. at 333;
*Perez,* 451 F. Supp. at 291-92; *Colvin,* 451 F. Supp. at 239-40.
Johnson, a *pro se* litigant, appears unaware of the need to ex-
haust the First Step Act's administrative exhaustion requirement
or argue for waiver. In the interest of justice, this court assesses
whether waiver might be appropriate. Johnson is eligible for a
waiver of administrative exhaustion if either (1) exhaustion
"would be futile," *Washington,* 925 F.3d at 118; (2) the "admin-
istrative process would be incapable of granting adequate relief,"
*id.* at 119; or (3) "pursuing agency review would subject [John-
son] to undue prejudice." *Id.* While the threat of COVID-19—a
frequent consideration in waivers to date—does not on its own
justify waiver here, Johnson is eligible for waiver of administra-
tive exhaustion under all three exceptions for other reasons.

   c.   *The current COVID-19 situation is insufficient to*
        *justify waiver in Johnson's case*

At the height of the COVID-19 pandemic, district courts within
this Circuit somewhat regularly waived administrative exhaus-
tion for individuals who were at severe risk of illness or death. [7]

---

[7] The First Step Act, which enabled defendants – in addition to the BOP –
to bring compassionate release motions, was signed into law on December
21, 2018. *See S.756 – First Step Act of 2018,* Congress.gov,
https://www.congress.gov/bill/115th-congress/senate-bill/756 (last ac-
cessed Apr. 14, 2023). COVID-19 first became a serious public health
concern in early 2020. *See, e.g.,* World Health Organization, WHO Direc-
tor-General's Opening Remarks at the Media Briefing on COVID-19, March
11, 2020, https://www.who.int/director-general/speeches/detail/who-
director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---

*See, e.g., Sawicz*, 453 F. Supp. 3d at 604 (finding that a thirty-day delay in a defendant's ability to file a compassionate release motion would put him at "significant risk of suffering catastrophic health consequences"); *United States v. Haney*, 454 F. Supp. 3d 316, 321 (S.D.N.Y. 2020) ("[U]nder present circumstances, each day a defendant must wait . . . threatens him with a greater risk of infection and worse."); *Zukerman*, 451 F. Supp. 3d at 333 (noting that "[u]ndue delay," if resulting in catastrophic health consequences, could "make exhaustion futile," cause relief provided by the BOP to become "inadequate," and "unduly prejudice[]" the defendant) (citing *Washington*, 925 F.3d at 120-21); *United States v. Russo*, 454 F. Supp. 3d 270, 272, 277 (S.D.N.Y. 2020) (granting a waiver during the height of COVID-19 where the "Government [was] unable to obtain" information on "when the BOP will resolve the defendant's request for compassionate release").

In the case at bar, however, the threat of COVID-19 does not constitute adequate grounds for a waiver of administrative exhaustion. First, due to improved treatment options, high vaccination rates, and lower rates of circulation, COVID-19 is much less dangerous today than it was in the early part of 2020, even in prison settings. More recently, courts within this Circuit have not been easily persuaded to waive administrative exhaustion due to the general threat of COVID-19. *See, e.g., United States v. Sanchez*, No. 21-CR-97-1 (LTS), 2022 WL 934065, at *1 (S.D.N.Y. Mar. 29, 2022) (declining to waive exhaustion where the defendant made "only generic arguments based on the history of COVID-19 at [his facility]," and did not "show how or why he is at any higher risk of disease than any other inmate"); *United States v. Campbell*, No. 17-CR-54 (NRB), 2022 WL 2305761, at

---

11-march-2020 (announcing that the WHO had declared COVID-19 a pandemic). Thus, there has been relatively little time in which courts could evaluate whether waiver might be appropriate in other contexts.

*1 (S.D.N.Y. June 27, 2022) (declining to grant a waiver where the defendant "fail[ed] to show any medical condition that would put him at greater risk of contracting COVID-19"). Given that COVID-19 is both less prevalent and easier to protect against than at the height of the pandemic, the generalized risk posed by the virus is insufficient to warrant waiving administrative exhaustion.

Although Johnson alleges that COVID-19 poses an unusually severe threat to his health and life due to his several serious comorbidities, this is also insufficient to permit waiver. During the height of the pandemic in 2020, some courts granted exhaustion waivers for defendants with co-morbidities similar to those suffered by Johnson. *See, e.g., Zukerman,* 451 F. Supp. 3d at 330, 333 (waiving exhaustion due to the urgent risk posed by COVID-19 for an individual with diabetes, hypertension, and obesity); *Colvin,* 451 F. Supp. 3d at 238, 240 (waiving exhaustion for an individual with diabetes and high blood pressure). As the prevalence of the virus has subsided, courts have declined to do so, even for defendants with medical problems. *See, e.g., United States v. Guzzone,* No. 20-CR-354 (LJL), 2021 WL 5417436, at *1-2 (S.D.N.Y. Nov. 18, 2021) (declining to waive exhaustion where the defendant had asthma, irritable bowel syndrome, and diverticulitis).[8]

Additional circumstances mitigate Johnson's particularized risk. First, courts have recognized that vaccination reduces the risk of contracting the COVID-19 virus and becoming seriously ill. *See, e.g., United States v. Oquendo,* No. 13-CR-357-1 (KPF), 2023 WL

---

[8] See also *United States v. Oquendo,* No. 13-CR-357-1 (KPF), 2023 WL 199609, at *4 (S.D.N.Y. Jan. 17, 2023); *United States v. Lora,* No. 16-CR-44-5 (KPF), 2022 WL 1055749, at *4 (S.D.N.Y. Apr. 8, 2022) (denying compassionate release requests based on COVID-19 comorbidities similar to those suffered by Johnson (including diabetes and hypertension) on the merits).

199609, at *4 (S.D.N.Y. Jan. 17, 2023); *United States v. De Vargas*, No. 08-CR-115 (NGG), 2023 WL 2787845, at *4 (E.D.N.Y. Apr. 4, 2023). Thus, "many courts have denied compassionate release to vaccinated defendants" who seek a sentence reduction because of COVID-19. *Russo*, 2022 WL 17247005, at *5 (collecting cases); *see also United States v. Jones*, No. 17-CR-214 (CM), 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021) (noting that "the risk of COVID-19 for vaccinated individuals is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons" after being vaccinated). While "being fully vaccinated does not completely eliminate the risk and danger of contracting COVID-19, as variants, breakthrough infections, and infection rates have risen," *United States v. Watts*, No. 92-CR-767 (KAM), 2023 WL 35029, at *9 (E.D.N.Y. Jan. 4, 2023), and recent variants may spread "more easily and can cause reinfection among vaccinated individuals, [they are] considered less severe in causing illness and death." *Mayes v. United States*, No. 12-CR-385 (ARR), 2023 WL 22632, at *4 (E.D.N.Y. Jan. 3, 2023). In the case at hand, Johnson received two rounds of the Moderna vaccine on February 10, 2021 and March 9, 2021. (Gov't Opp. at 5.) Thus, much of the risk posed by COVID-19 as a result of his co-morbidities is mitigated by his fully vaccinated status. Moreover, FCI Williamsburg, where Johnson now resides, has the virus relatively under control. As of April 18, 2023, the facility only has one active COVID-19 case among inmates and staff, and only "minimal" operational modifications are in place. *See COVID-19 Update*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed Apr. 18, 2023) ("*BOP COVID-19 Update*"). Given COVID-19's reduced prevalence, Johnson's vaccination status, and the state of operations at his facility, Johnson's particularized risk of contracting COVID-19 is insufficient to waive administrative exhaustion.

   *d. Administrative exhaustion would be futile and*
    *unlikely to grant adequate relief to Johnson*

While the threat of COVID-19 is insufficient to waive administrative exhaustion, requiring Johnson to request assistance from the BOP before being heard by this court would nonetheless be futile and unlikely to provide adequate relief. Considering the 30-day waiting period, the three months the government took to respond to his first motion[9] and the additional time the court would need to review the parties' new submissions, requiring Johnson to exhaust administrative remedies would likely take upwards of four months. Yet empirical evidence shows the BOP will almost certainly either deny or fail to respond to his request to make a motion, rendering this four-plus months-long exercise purely academic. With only six to ten months remaining on Johnson's custodial sentence, and a petition before the court in which the relief sought is the reduction of that very sentence, requiring Johnson to request assistance from the BOP would do little more than remove this court's ability to grant all or much of that relief.

To assess the likely outcome of a defendant going through the administrative process before filing a compassionate release motion, this court endeavored to determine how frequently the BOP files compassionate release motions on behalf of incarcerated defendants. An extensive but inexhaustive Westlaw, Bloomberg Law, and docket search of district court opinions within the Second Circuit turned up no cases between 2019[10] and 2023 in

---

[9] Johnson filed a motion for compassionate release on August 29, 2022. (Mot.) After approximately two months, the government had not responded to his motion. On October 28, 2022, the court ordered the government to respond by November 18, 2022. (10/28/2022 Text Order.) On November 18, 2022, the government requested an extension, (Gov't Extension Request Letter (Dkt. 29).) and finally submitted its response on November 21, 2022. (Gov't Opp.)

[10] The First Step Act was signed into law on December 21, 2018. *See S.756 – First Step Act of 2018*, Congress.gov.

which the BOP brought a compassionate release motion.[11] Instead, the court found 210 compassionate release motions brought by defendants themselves after first attempting to obtain assistance from the BOP.[12] (*See* Appendix A.) In 158 cases (75% of those reviewed), the BOP denied the defendant's request for compassionate release. (*Id.*) In 46 cases (22% of those reviewed), the BOP failed to respond to the defendant's request within 30 days. (*Id.*) In five cases (2% of those reviewed), the BOP both failed to respond to the defendant's request within 30 days and later denied the request. (*Id.*) In one case, the BOP responded, but did not make clear whether its response was a denial or a mere acknowledgement of receipt. (*Id.*) Though the BOP did not to move for compassionate release in a single one of these cases, courts granted the defendant's motion in full or in part in 65, or 31%, of the 210 cases in this analysis. (*See* Appendix A.) This

---

[11] This search should not be considered exhaustive. The high volume of compassionate release motions filed in this Circuit and the necessity (due to constraints of the docket search system) of initially identifying relevant cases using Westlaw, which does not publish all opinions, means that this analysis represents only a portion of compassionate release cases heard in this Circuit since enactment of the First Step Act.

[12] Where a defendant received an initial denial from the BOP but did not appeal administratively before bringing a First Step Act motion, some courts have held that administrative remedies were not fully exhausted. However, courts within this Circuit have frequently found an initial denial from the BOP to be sufficient for administrative exhaustion, *see, e.g.*, *United States v. Brown*, No. 15-CR-551 (ENV), 2021 WL 1062401, at *1 n. 1 (E.D.N.Y. Mar. 18, 2021); *United States v. Ebbers*, 432 F. Supp. 3d 421, 431 (S.D.N.Y. 2020). Many have also found administrative exhaustion 30 days after the defendant submitted their request to the BOP, *see, e.g.*, *United States v. Garcia*, 505 F. Supp. 3d 328, 331 (S.D.N.Y. 2020), or have waived the exhaustion requirement in such cases. *See, e.g.*, *United States v. Bess*, 455 F. Supp. 3d 53, 63 (W.D.N.Y. 2020); *United States v. Kissi*, 469 F. Supp. 3d 21, 32 (E.D.N.Y. 2020). For the purposes of this analysis, whether the court ultimately determined that all administrative remedies had been exhausted is immaterial. Rather, the court is interested solely in what action BOP took when presented with the opportunity to evaluate a defendant's request for compassionate release.

analysis informs the court that defendants virtually never suc-
ceed in obtaining BOP assistance in moving for compassionate
release, even in the approximately 31% of cases in which the de-
fendants ultimately meet the criteria for sentence reduction.[13]

The United States Sentencing Commission's records corroborate
the court's findings. The Commission found that courts within
the Second Circuit heard 1,556 motions for compassionate re-
lease between October 2019 and September 2022, and granted
420 (27%) of these motions. U.S. Sent'g Comm'n, Compassion-
ate Release Data Report: Fiscal Years 2020-2022 Table 3
(2022).[14] Of the 418 successful motions for which the Commis-
sion was able to determine motion origin, only one single motion
(0.2%) was brought by the BOP. *Id.* at Table 5.

---

[13] At times, BOP officials appear not to have treated inmate concerns with
appropriate seriousness. In *United States v. Montanez*, an inmate requested
forms to apply for compassionate release only to be told that requesting
release would be a "waste of time because the warden did not believe in
compassionate release and would not be granting any such requests." 458
F. Supp. 3d 146, 149 (W.D.N.Y. 2020). In *United States v. Wen*, officials
at a halfway house not only "represented" that the BOP had denied an
individual's request, but threatened the individual with disciplinary
measures if he did not "cease any efforts to be released," resulting in the
court estopping the government from arguing that he had not exhausted
his administrative remedies. 454 F. Supp. 3d 187, 195-96 (W.D.N.Y.
2020). At other times, BOP officials seem to have been largely inattentive
to inmate concerns, causing defendants to submit multiple requests or ap-
peals in order to receive a BOP response. *See, e.g., United States v. Day*, 473
F. Supp. 3d 209, 212 (W.D.N.Y. 2020); *United States v. Reid*, No. 05-CR-
596 (ARR), 2021 WL 837321, at *4 (E.D.N.Y. Mar. 5, 2021); *United States
v. Epps*, No. 18-CR-19 (JBA), 2020 WL 7332854, at *1 (D. Conn. Dec. 14,
2020); *United States v. Elliott*, No. 17-CR-128 (ARR), 2020 WL 4381810,
at *4 (E.D.N.Y. July 31, 2020).

[14] The Commission calculated these figures using data from sentencing
documents submitted by courts to the Commission, supplemented with in-
formation obtained from the PACER system. U.S. Sent'g Comm'n,
Compassionate Release Data Report: Fiscal Years 2020-2022 3 (2022).

Both this court and the Commission included in their analyses cases decided pre-COVID, at the height of the virus, and since the pandemic began to recede. Thus, the BOP's failure to bring compassionate release motions has remained consistent as COVID-related urgency has waxed and waned.[15] The BOP has simply declined to pursue compassionate release requests, regardless of how urgent or meritorious they are. Any bid Johnson might bring for the BOP to bring such a motion on his behalf would thus almost certainly be in vain.

Other courts have recognized the BOP's apparent abdication of its responsibilities as the initial gatekeeper for compassionate release motions, even when the threat posed by COVID-19 required urgent action to save lives. In *Russo,* the court, frustrated with the BOP's slow response time, declined to wait until the end of the 30-day waiting period, in large part because it was unclear when the BOP would "resolve the defendant's request." 454 F. Supp. 3d at 272. Similarly, in *United States v. Rountree,* the court waived exhaustion after the BOP failed to respond to an inmate's request after 25 days, in large part because the BOP's frequent lack of response and arduous appeals process had turned the statutory 30-day waiting period into "dead time, during which there is no prospect the BOP will come to the defendant's aid, and no likelihood that [the] BOP will provide the Court with the benefit of its considerable expertise concerning both the inmate and the conditions of confinement." 460 F. Supp. 3d 224, 233-34 (N.D.N.Y. 2020). These cases make clear that even in the context of the deadliest pandemic in a century, BOP consistently declined

---

[15] The court recognizes that the COVID-19 pandemic placed tremendous, unprecedented demands on the Bureau of Prisons. At the height of the pandemic, it was difficult for the BOP to safely maintain ongoing operations let alone implement new programs.

to bring compassionate release motions on behalf of inmates, including those with meritorious or urgent situations. It continues to do so today.

Finally, this court is cognizant of Congress's intent in enacting the First Step Act. At that time, Congress explicitly recognized longstanding problems with relying on the BOP to bring compassionate release motions on behalf of defendants. Prior to 2018, only the BOP was permitted to move for compassionate release on behalf of a defendant. U.S. Sent'g Comm'n, Compassionate Release: The Impact of the First Step Act and COVID-19 Pandemic 1 (2022). The compassionate release mechanism atrophied under the BOP's administration. A 2013 report from the Office of the Inspector General demonstrated that an average of only 24 incarcerated people per year were released via a BOP motion between 2006 and 2011. *See* U.S. Dep't of Just. Off. of the Inspector Gen., *The Federal Bureau of Prisons' Compassionate Release Program* 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf ("Off. of the Inspector Gen. Report"). The BOP was responsible for the custody and care of approximately 218,000 federal offenders at the time. *Id.* That report concluded that the BOP did "not properly manage the compassionate release program" and its "implementation of the program . . . [was] inconsistent and result[ed] in ad hoc decision making." *Id.* at 11.[16] Apparently recognizing the problems with such a system,[17] Congress amended the statute in 2018 to allow

---

[16] Of the 208 people whose release requests were approved by both a warden and a BOP Regional Director, 13% died awaiting a final decision by the BOP Director. Off. of the Inspector Gen. Report 1.

[17] Section 603(b) of the First Step Act of 2018, which amended § 3852(c)(1)(A) to allow prisoners to bring motions for compassionate release and is titled "Increasing the Use and Transparency of Compassionate Release." First Step Act of 2018, Pub. L. No. 115-391, title VI, § 603(b) (2018). *See also United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D.

inmates to bring motions for compassionate release themselves, subject to an administrative exhaustion requirement.[18]

Indeed, increasing access to the courts is a "paramount" intent of § 3582 in its current form. *See Haney*, 454 F. Supp. 3d at 320-21 (finding that § 3582's unorthodox exhaustion requirement and shorter than normal waiting period reflects congressional intent to provide a "meaningful and prompt judicial determination"); *Russo*, 454 F. Supp. 3d at 271 ("In essence, the 30-day rule was meant as an accelerant to judicial review" and "unquestionably reflects congressional intent for the defendant to have the right to a meaningful and prompt judicial determination of whether he should be released."); *United States v. Valencia*, No. 15-CR-163 (AT), 2020 WL 2319323, at *5 (S.D.N.Y. May 11, 2020) ("[A] close examination of the First Step Act reveals a patent congressional intent of timely judicial review for compassionate release claims."). Given that Congress took direct action to reform the compassionate release statute, "one might assume that, after the 2013 Inspector General's report and Congress's reaction

---

Pa. 2020) (stating that the First Step Act "remov[ed] the BOP's exclusive gatekeeper role" "[i]n an effort to improve and increase the use of the compassionate-release process" and noting that § 603(b)'s "purpose is enshrined in its title"); *United States v. Redd*, 444 F. Supp. 3d 717, 725 (E.D. Va. 2020) ("The First Step [Act] was passed against the backdrop of documented infrequency with which the BOP filed motions for a sentence reduction on behalf of defendants."); *United States v. Brown*, 457 F. Supp. 3d 691, 700 n.10 (S.D. Iowa 2020) ("The First Step Act's compassionate release provisions originally appeared as a stand-alone bill . . . [which] explicitly sought to improve the compassionate release process of the Bureau of Prisons.") (*citing* Granting Release and Compassion Effectively Act of 2018, S. 2471, 115th Cong. (2018)); 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement of Senator Cardin, co-sponsor of the First Step Act) ("[T]he bill expands compassionate release . . . and expedites compassionate release applications.").

[18] For a more fulsome discussion of this history, *see Brooker*, 976 F.3d at 231-33; *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 444-45 (D. Conn. 2020).

to it, the BOP would have built a better system for processing compassionate release requests administratively." *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 445 (D. Conn. 2020). Evidently, this has not been the case.[19]

The BOP maintains a critical and powerful role as first gatekeeper for compassionate release motions. The BOP's involvement in this manner *should* be a good thing. Its proximity to and supervision over incarcerated individuals means that it is, in theory, best placed to evaluate their eligibility for sentence reduction. Yet the BOP has failed in its responsibility to evaluate compassionate release requests—even for the approximately 30% of inmates whose motions courts ultimately found to be meritorious. Instead, the BOP has abdicated the responsibility of bringing compassionate release motions to defendants who generally lack formal or informal legal training, all while retaining the ability to impede and delay such defendants' ability to be heard. Given the denial or lack of response that is virtually assured to follow his request to the BOP for compassionate release, this court finds that requiring Johnson to exhaust his administrative remedies before evaluating his motion would be futile and unlikely to result in adequate relief.

> ### e. *Administrative exhaustion would subject Johnson to undue prejudice*

In addition to being futile and inadequate, requiring Johnson to exhaust his administrative remedies would subject him to undue prejudice. Under the *Washington v. Barr* framework, undue prejudice consists of "[t]hreatened or impending irreparable injury," and may occur when an individual is "prevented…from obtaining" relief from that injury. *Washington*, 925 F.3d at 119. "In

---

[19] If Congress did not provide adequate funding for the Bureau of Prisons to properly implement the First Step Act, it was incumbent upon the BOP to identify its inability to implement the Act with funds provided, and bring the issue to Congress's attention.

particular, an unreasonable or indefinite timeframe for administrative action may sufficiently prejudice plaintiffs to justify a federal court in taking a case prior to the complete exhaustion of administrative remedies." *Id.* While "a mere preference for speedy resolution is not enough," a "strong showing ... both of the inadequacy of the prescribed procedure and of impending harm" resulting "from delay incident to following the prescribed administrative procedure[,] militates in favor of waiving exhaustion." *Id.* Courts within and outside this Circuit have waived § 3582's exhaustion requirement where the time remaining in a sentence was short enough that requiring exhaustion would deny relief altogether or come close to doing so. *See, e.g., Colvin,* 451 F. Supp. 3d at 240 (granting a waiver in part because "the brief [11 day] duration of Defendant's remaining term of imprisonment" meant that "the exhaustion requirement likely renders BOP incapable of granting adequate relief" and "Defendant would be subjected to undue prejudice—the heightened risk of severe illness—while attempting to exhaust her appeals"); *Perez,* 451 F. Supp. 3d at 292-93 (waiving exhaustion in part because the individual had fewer than three weeks left in his sentence, thus "delaying release amounts to denying relief altogether"); *United States v. Morris,* No. 12-CR-154 (BAH), 2020 WL 2735651, at *6 (D.D.C. May 24, 2020) (granting waiver where there was "less than one month" left in the sentence). *See also Russo,* 454 F. Supp. At 271 (noting that, although not specifically granting waiver because, the defendant was at the "tail end" of his sentence with under six months remaining on his 60-month sentence); *United States v. Powell,* No. 94-CR-316 (ESH), 2020 WL 1698194, at *1 (D.D.C. Mar. 28, 2020) (noting that, although not specifically granting release because, the defendant had "only [three] months remaining on his 262-month sentence."). Thus, courts have recognized that requiring administrative exhaustion is unwarranted in situations in which

doing so would run up against the end of the individual's sentence.[20]

Johnson has approximately six to ten months left in his sentence.[21] As a result, requiring administrative exhaustion would cause Johnson irreparable harm by depriving Johnson of meaningful, if not all, relief. If Johnson's request is not denied outright, obtaining BOP assistance entails completing a "lengthy, multitiered administrative process," which includes (1) "various staff" reviewing the request; (2) the Warden determining that the request warrants approval; (3) further review by both the General Counsel and either the Medical Director or the Assistant Director of the Correctional Programs Division; and (4) the Director of the BOP filing a motion under § 3582(c). *Martinez-Brooks*, 459 F. Supp. 3d at 428-29. Given the BOP's generally slow response time, this process alone could use up Johnson's remaining sentence. Similarly, if Johnson's request is denied and he files an appeal, his appeal is also unlikely to be resolved quickly.[22] Finally, if his request goes unanswered, the 30-day waiting period for Johnson to re-file, the government's likely response time after Johnson's motion,[23] and the additional time the court would need to re-evaluate the parties' claims would, taken together, use

---

[20] Such waivers were granted primarily during the height of COVID-19.

[21] The court in *Russo* acknowledged the defendant's remaining six-month term of incarceration, but found waiver for other reasons. 454 F. Supp. 3d at 277-78.

[22] *See United States v. Agostini*, No. 00-CR-237 (VM), 2020 WL 6047362, at *1 (S.D.N.Y. Oct. 13, 2020) ("Administrative exhaustion requires that an inmate appeal a warden's denial of relief to the Regional Director of the [BOP] within twenty days. Following that step, if the Regional Director denies the inmate's request, the inmate has thirty days to appeal to the BOP General Counsel. The appeal to the BOP General Counsel is the final administrative appeal."); *see also* 28 C.F.R. §§ 542.15(a), 571.63(a)-(b).

[23] It took the government approximately three months to respond to the instant motion. The court expects future response times would likely be similar.

up most, if not all, of Johnson's remaining six to ten months of incarceration. In any of these possible situations, requiring administrative exhaustion would effectively deny Johnson the relief from prison confinement that he seeks, thereby prejudicing him.

In light of these circumstances, the court finds that waiver of administrative exhaustion is warranted. Therefore, the court will evaluate the merits of Johnson's motion.

### B.  Extraordinary and Compelling Reasons

#### 1.  Legal Framework

Congress has not defined extraordinary and compelling reasons for a sentence reduction in § 3582(c)(1)(A). The Sentencing Commission, however, has offered a "descri[ption of] what should be considered extraordinary and compelling." 28 U.S.C. § 994(t). Commentary on the operative policy statement to § 3582(c)(1)(A) provides that there may be extraordinary and compelling reasons when (1) the defendant suffers from a medical condition, such as terminal illness or a serious physical, functional, or cognitive impairment; (2) the defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment"; and/or (3) the defendant faces extraordinary family circumstances, including "the death or incapacitation of the caregiver of the defendant's minor child." U.S. Sent'g Guidelines Manual § 1B1.13, cmt. 1(A)-(C) (U.S. Sent'g Comm'n 2021). It also refers to a broad-sweeping fourth reason: "[a]s determined by the Director of the Bureau of Prisons," additional circumstances may produce "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at § 1B1.13, cmt. 1(D). The policy statement on § 3582(c)(1)(A) adds that a defendant must not be "a danger to the safety of any other person or to the community." *Id.* at § 1B1.13(2).

The Second Circuit has held that the First Step Act permits "district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them." *Brooker*, 976 F.3d at 237. Courts may but are no longer required to consider the Sentencing Commission's standard for what constitutes extraordinary and compelling reasons for a sentence reduction. *See United States v. Martinez*, No. 03-CR-1049-2 (NGG), 2022 WL 3019833, at *3 (E.D.N.Y. July 29, 2022). The "only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation alone shall not be considered an extraordinary and compelling reason." *Brooker*, 976 F.3d at 237-38 (citing 28 U.S.C. § 944(t)).

### 2.   Application

Johnson advances two main arguments for granting his compassionate release motion: (1) that his medical condition renders him at greater risk of illness or death from COVID-19; and (2) that his incarceration, which has spanned the length of the pandemic, has been unexpectedly punitive. (Mot. at 3-5.) The court finds that while the current threat from COVID-19 is insufficient to warrant compassionate release, Johnson's incarceration for the entirety of the pandemic and inability to access vital substance abuse and mental health treatment while frequently being moved from facility to facility has rendered his sentence more punitive than originally intended. Thus, a sentence reduction is appropriate in his case.

### a.   *Current Threat from COVID-19 and Johnson's Heightened Risk Factors*

Johnson argues that his serious co-morbidities put him at risk of illness or death from COVID-19. (*Id.* at 3-4.) Since the decline of COVID-19 cases and proliferation of vaccines, courts in this Circuit have generally rejected compassionate release motions based on the threat posed by the virus, asserting that "the risks posed by the pandemic alone do not constitute extraordinary and

compelling reasons for release, absent additional factors."
*Oquendo*, 2023 WL 199609, at *4 (quoting *United States v.
Nwankwo*, No. 12-CR-31 (VM), 2020 WL 2490044, at *1-2
(S.D.N.Y. May 14, 2020); *see also United States v. Lora*, No. 16-
CR-44-5 (KPF), 2022 WL 1055749, at *4 (S.D.N.Y. Apr. 8, 2022);
*United States v. Barraza Payan*, No. 18-CR-422 (KPF), 2022 WL
17757779, at *4 (S.D.N.Y. Dec. 19, 2022). In evaluating whether
an individual's current risk from the pandemic warrants compas-
sionate release, courts have examined their vaccine status, the
COVID-19 situation at their specific correctional facility, and
whether their co-morbidities are being managed. *See, e.g.,*
*Oquendo*, 2023 WL 199609, at *4; *Lora*, 2022 WL 1055749, at
*4-5; *Barraza Payan*, 2022 WL 17757779, at *4-5. Although
Johnson possesses several serious co-morbidities, including dia-
betes, obesity, hypertension, and a history of smoking, (Mot. at
3), courts in recent months have deemed similar health problems
insufficient for compassionate release, at least in part because de-
fendants have "worked successfully with BOP medical
professionals to address [them]." *Oquendo*, 2023 WL 199609, at
*4 (hypertension, pre-diabetes, kidney issues, and hepatitis C);
*see also Lora*, 2022 WL 1055749, at *4 (hypertension and diabe-
tes).Additionally, Johnson has been vaccinated for COVID-19,
(Gov't Opp. at 5), and there is currently only one confirmed case
of COVID-19 among staff and inmates at his correctional facility,
which is operating with "minimal" adjustments. (*See BOP COVID-
19 Update*.) As a result, Johnson's current risk of contracting
COVID-19 does not provide a compelling reason for granting his
compassionate release motion.

    *b. Punitive Nature of Johnson's Incarceration Due to*
       *COVID-19*

But Johnson also argues that his prison term—which began in
2017—has been more punitive than intended by the court be-
cause he has been incarcerated for the entirety of the COVID-19

pandemic. This argument has merit. The conditions of incarceration during the pandemic have been severe, including "onerous lockdowns," *United States v. Hatcher*, No. 18-CR-454-10 (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021), restrictions such as the "curtailment of facility programming and visitation," *Oquendo*, 2023 WL 199609, at *5, and outbreaks made worse by the difficulties of social distancing in prison—which have left inmates susceptible to and fearful of serious illness or death. *See* Eddie Burkhalter et al., *Incarcerated and Infected: How the Virus Tore Through the U.S. Prison System*, N.Y. Times (Apr. 10, 2021), https://www.nytimes.com/interactive/2021/04/10/us/covid-prison-outbreak.html?smid=url-share. Undoubtedly, "a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison." *United States v. Mcrae*, No. 17-CR-643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021). This court has recognized that detention during the pandemic is "essentially the equivalent of either time and a half or two times what would ordinarily be served." *United States v. Elias,* 579 F. Supp. 3d 374, 378 (E.D.N.Y. 2022); *see also United States v. Valencia-Lopez*, No. 05-CR-841 (NGG), 2022 WL 198604, at *3 (E.D.N.Y. Jan. 21, 2022). Consequently, courts that have been unwilling to grant compassionate release based on the threat of COVID-19 in recent months have nonetheless done so for individuals who have demonstrated that their imposed sentence was more severe than originally intended, due to the pandemic. *See, e.g., Oquendo*, 2023 WL 199609, at *5; *Lora*, 2022 WL 1055749, at *5; *Barraza Payan*, 2022 WL 17757779, at *5; *United States v. Rodriguez*, No. 05-CR-960 (JPO), 2022 WL 158685, at *4 (S.D.N.Y. Jan. 18, 2022); *United States v. Francisco-Ovalle*, No. 18-CR-526 (AJN), 2022 WL 1094730, at *3 (S.D.N.Y. Apr. 12, 2022). In such situations, courts have concluded that "pandemic-induced

conditions of confinement can constitute extraordinary and compelling circumstances warranting compassionate release, particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic." *Oquendo*, 2023 WL 199609, at *5.

In the instant case, Johnson has served all but six to ten months of a 114-month sentence and has been incarcerated for the entirety of the COVID-19 pandemic. His incarceration during the pandemic has included outbreaks, lockdowns, limited or no visitation and programming opportunities, and the heightened fear of contracting COVID-19 (particularly given his serious comorbidities) in an environment where social distancing is difficult, if not impossible. Johnson also moved facilities multiple times,[24] and was required to quarantine five times.[25] (Mot. at 1.) His frequent transfers from one facility to another and awareness of his own susceptibility to severe illness means that his incarceration was likely even more difficult than that of the average inmate residing in a single facility through the pandemic. Additionally, Johnson "lost a lot of family members" to the virus, (Mot. at 1), and his incarceration prevented him from being with family through these losses.

The conditions of Johnson's confinement have been further worsened by the BOP's apparent failure to provide him with mental health services and substance abuse treatment, the latter of which was specifically requested by this court at the time of his sentencing. In at least one instance, a district court in this Circuit has acknowledged the overly punitive nature of incarceration where an inmate has not had access to necessary mental health

---

[24] *See* note 5.

[25] Johnson is no longer housed at the correctional facility in which he resided when he filed this motion (an unknown facility located in Ohio). (Mot. at 1.) He has therefore likely experienced additional quarantines since that time.

and drug abuse treatment. *See Hatcher*, 2021 WL 1535310, at \*4 (finding that while the harsh conditions of incarceration during the pandemic alone were insufficient to justify sentence reduction, such conditions in addition to the deprivation of "mental health care, drug abuse treatment, and other important services" warranted compassionate release).[26]

As noted in his Pre-Sentencing Investigation Report, Johnson has a long history of addiction and mental health issues. Johnson had a very difficult upbringing, in no small part because of his mother's drug abuse and untimely death due to complications from HIV, a gunshot wound, and other ailments when Johnson was 15 years old. (PSR ¶¶ 39, 44.) According to family members, her death caused Johnson to take a downward turn and ultimately develop a substance use disorder. (*Id.* ¶ 42.) Additionally, Johnson was diagnosed with PTSD in 2011 and meets the criteria for borderline personality disorder. (*Id.* ¶¶ 55-56.) He spent multiple years prior to his incarceration homeless, during which time he undertook multiple unfortunately unsuccessful attempts at rehabilitation for his drug addiction. (*Id.* ¶¶ 42, 44, 60-64.) Indeed, his addiction and its accompanying financial debts and costs appear to have been his motive for participating in the crimes for which he is currently incarcerated. (*Id.* ¶ 7; Def. Sentencing Memo (Dkt. 20) at 1; Sentencing Tr. (Dkt. 26) at 12:19-22.) Due to this history, the court requested at Johnson's sentencing that he be provided with drug abuse treatment while incarcerated.

---

[26] The United States Sentencing Commission's agreed upon but not yet enacted amendments to the Sentencing Guidelines—which would include circumstances in which "the defendant [is] suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death" as an "extraordinary and compelling reason" permitting compassionate release – indicates that the Commission may be aligned with this analysis. U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines (Preliminary) Proposed Amendment Eleven 2 (2023).

(Sentencing Tr. at 20:8-13 ("[T]he Court also strongly recommends to the Bureau of Prisons that the defendant be designated to a facility where he may partake in a drug treatment program, which the Court recommends be provided to the defendant so that he can prepare for reintegration into society at the conclusion of this sentence"); *see also* Judgment at 2.)[27]

Unfortunately, it appears that Johnson has not received the treatment envisioned by the court, despite his lengthy incarceration. BOP cannot force inmates to enter treatment. It can, however, make treatment available where inmates seek it out of their own volition and is *required* to do so "for each prisoner the [BOP] determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b)(5). Yet, notwithstanding the court's request that he be enrolled in a treatment program, indications that he continues to struggle with addiction, a lengthy seven-year incarceration, and, importantly, his own attempts to receive treatment (including signing up for the MAT program), the Government has informed the court that Johnson "has not yet completed a drug treatment program." (Second Gov't Letter at 1.) Instead, he remains "in the screening process to determine his need for MAT treatment," (*id.* at 2), despite a well-documented

---

[27] The BOP provides a Drug Abuse Education program and five drug treatment programs to federal inmates–the Nonresidential Drug Abuse Treatment Program (NRDAP), Residential Drug Abuse Program (RDAP), Challenge program, Medication-Assisted Treatment (MAT) program, and Community Treatment Services. U.S. Gov't Accountability Office, Bureau of Prisons: Improved Planning Would Help BOP Evaluate and Manage Its Portfolio of Drug Education and Treatment Programs 8 (2020). The MAT program is a relatively new curriculum that "combine[s] cognitive behavioral therapy with the use of certain medications—naltrexone, methadone, and buprenorphine—administered based on individuals' needs." *Id.* at 9. It has been shown to "reduce opioid use and increase treatment retention when compared with other treatments" and was implemented by the BOP in Fiscal Year 2019. *Id.* at 2, 9.

medical history of long-term addiction problems, multiple attempts at rehabilitation, and most recently, "opioid use and withdrawal in 2022, as well as the use of [non-prescribed] suboxone."[28] (PSR ¶¶ 59-64; First Gov't Letter at 1.) While all signs indicate that Johnson continues to be in great need of MAT or other intensive treatment, it remains unclear if or when he will receive that treatment.

As a result of this failure and his above-discussed incarceration for the entirety of the COVID-19 pandemic, Johnson's sentence has been more punitive than originally intended. This constitutes extraordinary and compelling reasons for a sentence reduction.

### C. § 3553(a) Factors

#### 1. Legal Framework

To grant compassionate release, a district court must not only identify extraordinary and compelling reasons but must also find that the sentence reduction is warranted by the factors set forth in 18 U.S.C. § 3553(a). § 3582(c)(1)(A); *see also Keitt*, 21 F.4th at 69 ("[A] finding of extraordinary and compelling reasons is necessary, but not sufficient, to grant a defendant's motion for compassionate release.") These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the

---

[28] Although Johnson completed the Drug Abuse Education Course in February 2023 (including two more course hours than is required), this program is "not a treatment program," and aims instead to "help the offender to make an accurate evaluation of the consequences of his alcohol and/or drug use, and to consider the need for treatment." (Second Gov't Letter at 1.) Additionally, Johnson is currently participating in a weekly "narcotics treatment group," of which he has attended three of five meetings since joining the group. (*Id.*)

public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1)-(2). A court must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* at § 3553(a)(6). However, a court is not required to consider disparities between co-defendants. *See United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008); *United States v. Medina*, 607 F. App'x 60, 61 (2d Cir. 2015) (Summary Order).

### 2. Application

The § 3553(a) factors weigh in favor of granting Johnson's motion for compassionate release. As it pertains to the "nature and circumstances of the offense and the history and characteristics of the defendant," it is indisputable that the crime for which Johnson was convicted is serious. Johnson participated in two armed robberies. In the robbery of Hill Country Barbeque, he entered the building with a co-conspirator, who brandished a firearm. (Gov't Opp. at 1.) The defendant and his co-conspirator directed the manager to lie on the floor and proceeded to steal $9,000 and a cell phone. (*Id.*) In the robbery of Washington Seafood, Johnson was let into the building by employees, and then left the door ajar so that his co-conspirators could enter. (*Id.*) The defendant left the building while the co-conspirators pushed the employees into an office at gunpoint and stole $864. (*Id.*) Although Johnson does not appear to have actually brandished a weapon during these robberies, his co-conspirators did, and he nonetheless participated in crimes which put ordinary people at risk of injury or death – although neither occurred here. (*Id.*)

However, it is also clear that Johnson experienced significant trauma and hardship during his life before prison. As discussed above, Johnson's mother was addicted to heroin and crack cocaine throughout his childhood. (PSR ¶ 44.) In the wake of her

death, he developed PTSD and begin abusing drugs. (*Id.* ¶¶ 42, 55.) When he was 18 or 19 years old, Johnson's father "kicked him out of the house," rendering him homeless. (Def. Sentencing Memo at 1.) The court recognized at sentencing and continues to recognize today that these experiences cannot be fully disentangled from Johnson's present involvement in the criminal justice system. As previously discussed, Johnson committed the instant crimes because he was indebted to a heroin dealer and/or for money to buy drugs. (PSR ¶ 7; Def. Sentencing Memo at 1; Sentencing Tr. at 12:19-22.) Were it not for his struggles with addiction, amidst the trauma of his early life, Johnson might not have participated in these crimes. As such, Johnson's sentence should include the opportunity for rehabilitation.[29] Given his inability to access addiction treatment during his incarceration thus far, both Johnson and society as a whole would best be served by a sentence reduction that enables and requires him to obtain such treatment. In regard to "the need to avoid unwarranted sentence disparities" among similarly-situated defendants, the court emphasizes that Johnson has served all but six or ten months of his 114-month term of incarceration. (Judgment at 2). This term fell at the low end of Johnson's guidelines range. (Sentencing Tr. at 3:14-18, 4:14-16.) An effective sentence six to ten months below the guidelines range hardly raises concerns of unwanted sentencing disparities.

Thus, Johnson has served a considerable sentence, one that reflects the seriousness his offense, promotes respect for the law, and provides just punishment for his actions. The court is hopeful

---

[29] The court considered at sentencing, and continues to take into account, the importance of rehabilitation, particularly when evaluating whether Johnson has been able to access treatment necessary for such rehabilitation during his incarceration. (*See* Sentencing Tr. at 6:7-18; 8:5-25; 10:14-18 (describing Johnson's struggles with addiction and his family's hopes for him to be rehabilitated).)

that Johnson's many years of imprisonment have served as a sufficient deterrent to future potential criminal conduct. And because granting compassionate release results in a relatively minor departure from Johnson's original sentence, doing so does not raise concerns about sentence disparities among similarly situated defendants. The court also notes that Johnson's lack of access to mental health services and drug treatment during his incarceration further weighs in favor of granting release. *See* § 3553(a)(2)(D). Thus far, incarceration has not proven to be an effective manner for Johnson to obtain substance use disorder treatment. Neither Johnson nor the community to which he will eventually return is served by Johnson's continued incarceration when his clear problems with drug addiction have gone unaddressed for so long. Instead, it is in the best interest of Johnson's rehabilitative prospects and the safety of the public to permit Johnson's release, subject to supervision that includes addiction and mental health treatment.

### III. CONCLUSION

For the reasons stated above, Johnson's § 3582 motion for compassionate release is GRANTED, and his sentence is reduced to time served, followed by a period of supervised release of three years, during which all previously imposed conditions will apply.

This order is STAYED for up to seven days for the verification of the defendant's residence, establishment of a release plan including mental health and substance abuse care as contemplated by the conditions of supervised release, and to make appropriate travel arrangements. The defendant shall be released within seven days, as soon as a residence is verified, a release plan is established, and appropriate travel arrangements are made. There shall be no delay in ensuring travel arrangements are made. If more than seven days are needed to make these preparations, the parties shall immediately notify the court and show cause why the stay should be extended.

SO ORDERED.

Dated:  Brooklyn, New York
        April 25, 2023

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge

Appendix A

| Case | Citation | Motion Origin | BOP Action[1] | Result of Motion |
|---|---|---|---|---|
| *United States v. Reyes* | No. 11-CR-1 (JBA), 2021 WL 2154714 (D. Conn. May 26, 2021) | Defendant | Denied | Granted |
| *United States v. Quintero* | 458 F. Supp. 3d 130 (W.D.N.Y. 2020) | Defendant | Denied | Granted |
| *United States v. Lora* | No. 16-CR-44-5 (KPF), 2022 WL 1055749 (S.D.N.Y. Apr. 8, 2022) | Defendant | Denied | Granted |
| *United States v. Mcrae* | No. 17-CR-643 (PAE), 2021 WL 142277 (S.D.N.Y. Jan. 15, 2021) | Defendant | Denied | Granted |
| *United States v. Nieves-Feliciano* | No. 19-CR-135 (JBA), 2021 WL 1170317 (D. Conn. Mar. 29, 2021) | Defendant | Denied | Granted |
| *United States v. Oquendo* | No. 13-CR-357-1 (KPF), 2023 WL 199609 (S.D.N.Y. Jan. 17, 2023) | Defendant | Denied | Granted |
| *United States v. Serrano* | No. 15-CR-608-4 (KPF), 2022 WL 1443688 (S.D.N.Y. May 6, 2022) | Defendant | Denied | Granted |
| *United States v. Bess* | 455 F. Supp. 3d 53 (W.D.N.Y. 2020) | Defendant | Denied | Granted |
| *United States v. Salemo* | No. 11-CR-65 (JSR), 2021 WL 4060354 (S.D.N.Y. Sept. 7, 2021) | Defendant | Denied | Granted |
| *United States v. McKinney* | 465 F. Supp. 3d 245 (W.D.N.Y. 2020) | Defendant | Denied | Granted |
| *United States v. Kissi* | 469 F. Supp. 3d 21 (E.D.N.Y. 2020) | Defendant | Denied | Granted |
| *United States v. Ebbers* | 432 F. Supp. 3d 421 (S.D.N.Y. 2020) | Defendant | Denied | Granted |
| *United States v. El-Hanafi* | 460 F. Supp. 3d 502 (S.D.N.Y. 2020) | Defendant | Denied | Granted |
| *United States v. Williams-Bethea* | 464 F. Supp. 3d 562 (S.D.N.Y. 2020) | Defendant | Denied | Granted |
| *United States v. Hernandez* | 451 F. Supp. 3d 301 (S.D.N.Y. 2020) | Defendant | Denied | Granted |
| *United States v. Cabrera* | 531 F. Supp. 3d 863 (S.D.N.Y. 2021) | Defendant | Denied | Granted |
| *Garavito-Garcia v. United States* | 544 F. Supp. 3d 484 (S.D.N.Y. 2021) | Defendant | Denied | Granted |
| *United States v. Glynn* | No. 06-CR-580 (JSR), 2022 WL 562652 (S.D.N.Y. Feb. 24, 2022) | Defendant | Denied | Granted |
| *United States v. Francisco-Ovalle* | No. 18-CR-526 (AJN), 2022 WL 1094730 (S.D.N.Y. Apr. 12, 2022) | Defendant | Denied | Granted |

| Case | Citation | Motion Origin | BOP Action[1] | Result of Motion |
|------|----------|---------------|---------------|------------------|
| *United States v. Pina* | No. 18-CR-179 (JSR), 2020 WL 3545514 (S.D.N.Y. June 29, 2020) | Defendant | Denied | Granted |
| *United States v. Rengifo* | 569 F. Supp. 3d 180 (S.D.N.Y. 2021) | Defendant | Denied | Granted |
| *United States v. Gluzman* | No. 96-CR-323 (LJL), 2020 WL 4233049 (S.D.N.Y. July 23, 2020) | Defendant | Denied | Granted |
| *United States v. Ballard* | 552 F. Supp. 3d 461 (S.D.N.Y. 2021) | Defendant | Denied | Granted |
| *United States v. Knight* | 488 F.Supp.3d 19 (W.D.N.Y. 2020) | Defendant | Denied | Granted |
| *United States v. De La Cruz* | No. 17-CR-150 (VAB), 2020 WL 6193891 (D. Conn. Oct. 22, 2020) | Defendant | Denied | Granted |
| *United States v. Gonzalez* | No. 19-CR-90 (VAB), 2020 WL 7024905 (D. Conn. Nov. 30, 2020) | Defendant | Denied | Granted |
| *United States v. Rivera* | No. 17-CR-207 (SRU), 2020 WL 7188418 (D. Conn. Dec. 7, 2020) | Defendant | Denied | Granted |
| *United States v. Sturdivant* | No. 12-CR-74 (SRU), 2020 WL 6875047 (D. Conn. Nov. 23, 2020) | Defendant | Denied | Granted |
| *United States v. Cannon* | No. 17-CR-174 (SRU), 2022 WL 2867858 (D. Conn. July 21, 2022) | Defendant | Denied | Granted |
| *United States v. Williams* | 456 F. Supp. 3d 414 (D. Conn. 2020) | Defendant | Denied[2] | Granted |
| *United States v. Marks* | 455 F. Supp. 3d 17 (W.D.N.Y. 2020) | Defendant | Denied | Granted |
| *United States v. Jepsen* | 451 F. Supp. 3d 242 (D. Conn. 2020) | Defendant | Denied[3] | Granted |
| *United States v. Wen* | 454 F. Supp. 3d 187 (W.D.N.Y. 2020) | Defendant | Denied | Granted |
| *United States v. Miller* | No. 15-CR-132-2 (VLB), 2020 WL 3187348 (D. Conn. June 15, 2020) | Defendant | Denied | Granted |
| *United States v. Rivera* | 466 F. Supp. 3d 310 (D. Conn. 2020) | Defendant | Denied | Granted |
| *United States v. Watts* | No. 92-CR-767 (E.D.N.Y. [Order Date] Jan. 4, 2023) (Court Docket Only) | Defendant | Denied | Granted |
| *United States v. Hansen* | No. 07-CR-520 (E.D.N.Y. [Order Date] Apr. 9, 2020) (Court Docket Only) | Defendant | Denied | Granted |
| *United States v. Chunn* | No. 16-CR-388 (E.D.N.Y. [Order Date] Apr. 8, 2020) (Court Docket Only) | Defendant | Denied | Granted |
| *United States v. Asaro* | No. 17-CR-127 (E.D.N.Y. [Order Date] Apr. 17, 2020) (Court Docket Only) | Defendant | Denied | Granted |
| *United States v. Ahmed* | No. 12-CR-661 (E.D.N.Y. [Order Date] Dec. 28, 2020) (Court Docket Only) | Defendant | Denied | Granted |

| Case | Citation | Motion Origin | BOP Action[1] | Result of Motion |
|---|---|---|---|---|
| *United States v. Haynes* | No. 93-CR-1043 (E.D.N.Y. [Order Date] Apr. 22, 2020) (Court Docket Only) | Defendant | Denied | Granted |
| *United States v. Garcia* | 505 F. Supp. 3d 328 (S.D.N.Y. 2020) | Defendant | Denied | Granted in part |
| *United States v. Campagna* | 612 F. Supp. 3d 365 (S.D.N.Y. 2020) | Defendant | Denied | Granted in part |
| *United States v. Henareh* | 486 F. Supp. 3d 744 (S.D.N.Y. 2020) | Defendant | Denied | Granted in part |
| *United States v. Henareh* | No. 11-CR-93-1 (JSR), 2021 WL 119016 (S.D.N.Y. Jan. 13, 2021) | Defendant | Denied | Granted in part |
| *United States v. Smith* | No. 14-CR-813 (KPF), 2022 WL 1063170 (S.D.N.Y. Apr. 8, 2022) | Defendant | Denied | Granted in part |
| *United States v. Reiter* | No. 87-CR-132 (VSB), 2021 WL 1424332 (S.D.N.Y. Apr. 15, 2021) | Defendant | Denied | Ordered Further Proceedings |
| *United States v. Bailey* | No. 97-CR-269 (DLC), 2021 WL 4942954 (S.D.N.Y. Oct. 22, 2021) | Defendant | Denied | Denied |
| *United States v. Dunnigan* | No. 15-CR-202 (EAW), 2022 WL 2062519 (W.D.N.Y. June 6, 2022) | Defendant | Denied | Denied |
| *United States v. Beckett* | No. 20-CR-2013-3 (KAM), 2022 WL 2819075 (E.D.N.Y. July 19, 2022) | Defendant | Denied | Denied |
| *United States v. Figueroa* | No. 15-CR-495 (ARR), 2021 WL 664004 (E.D.N.Y. Feb. 19, 2021) | Defendant | Denied | Denied |
| *United States v. Johnson* | No. 16-CR-457-1 (NGG), 2021 WL 466782 (E.D.N.Y. Feb. 9, 2021) | Defendant | Denied | Denied |
| *United States v. Brown* | No. 15-CR-551 (ENV), 2021 WL 1062401 (E.D.N.Y. Mar. 18, 2021) | Defendant | Denied | Denied |
| *United States v. Cato* | No. 16-CR-326 (ARR), 2020 WL 5709177 (E.D.N.Y. Sept. 24, 2020) | Defendant | Denied | Denied |
| *United States v. Elliott* | No. 17-CR-128 (ARR), 2020 WL 4381810 (E.D.N.Y. July 31, 2020) | Defendant | Denied | Denied |
| *United States v. Lombardo* | No. 17-CR-318 (JMA), 2020 WL 6118821 (E.D.N.Y. Oct. 16, 2020) | Defendant | Denied | Denied |
| *United States v. D'Acunto* | No. 18-CR-14 (VM), 2020 WL 1904007 (S.D.N.Y. Apr. 16, 2020) | Defendant | Denied | Denied |
| *United States v. McIntyre* | No. 07-CR-6174L (DGL), 2020 WL 3564782 (W.D.N.Y. July 1, 2020) | Defendant | Denied | Denied |
| *United States v. Casiano* | No. 05-CR-195 (JBA), 2021 WL 1589271 (D. Conn. Apr. 22, 2021) | Defendant | Denied | Denied |
| *United States v. DiMartino* | 459 F. Supp. 3d 457 (D. Conn. 2020) | Defendant | Denied | Denied |
| *United States v. Henderson* | No. 19-CR-30 (VLB), 2020 WL 7321403 (D. Conn. Dec. 11, 2020) | Defendant | Denied | Denied |

| Case | Citation | Motion Origin | BOP Action[1] | Result of Motion |
|------|----------|---------------|---------------|------------------|
| *United States v. Williams* | No. 11-CR-172-1 (VLB), 2020 WL 6826740 (D. Conn. Nov. 20, 2020) | Defendant | Denied | Denied |
| *United States v. Johnson* | No. 16-CV-267 (VLB), 2020 WL 5369200 (D. Conn. Sept. 8, 2020) | Defendant | Denied | Denied |
| *United States v. Daniels* | 524 F. Supp. 3d 160 (W.D.N.Y. 2021) | Defendant | Denied | Denied |
| *United States v. Sturgis* | No. 10-CR-6022-MWP-4 (CJS), 2020 WL 7063359 (W.D.N.Y. Nov. 24, 2020), aff'd, 21-261-CR, 2021 WL 5972490 (2d Cir. Dec. 16, 2021) | Defendant | Denied | Denied |
| *United States v. Goins* | No. 05-CR-292 (VLB), 2020 WL 4194534 (D. Conn. July 21, 2020) | Defendant | Denied | Denied |
| *United States v. Gotti* | 433 F. Supp. 3d 613 (S.D.N.Y. 2020) | Defendant | Denied | Denied |
| *United States v. Malloy* | No. 07-CR-898 (VM), 2023 WL 2237504 (S.D.N.Y. Feb. 27, 2023) | Defendant | Denied | Denied |
| *United States v. Burrell* | No. 15-CR-95 (AJN), 2020 WL 7646887 (S.D.N.Y. Dec. 23, 2020) | Defendant | Denied | Denied |
| *United States v. Francisco-Ovalle* | No. 18-CR-526 (AJN), 2021 WL 123366 (S.D.N.Y. Jan. 13, 2021) | Defendant | Denied | Denied |
| *United States v. Fernandez* | No. 12-CR-844-9 (AJN), 2020 WL 3034799 (S.D.N.Y. June 5, 2020) | Defendant | Denied | Denied |
| *United States v. Allums* | No. 15-CR-153-S6 (VSB), 2020 WL 5796265 (S.D.N.Y. Sept. 29, 2020) | Defendant | Denied | Denied |
| *United States v. Carter* | No. 18-CR-390 (PAE), 2020 WL 3104807 (S.D.N.Y. June 11, 2020) | Defendant | Denied | Denied |
| *United States v. Mack* | 493 F. Supp. 3d 228 (S.D.N.Y. 2020) | Defendant | Denied | Denied |
| *United States v. Diallo* | No. 19-CR-189 (VSB), 2021 WL 2183089 (S.D.N.Y. May 27, 2021) | Defendant | Denied | Denied |
| *United States v. Vasquez* | No. 11-CR-389 (SHS), 2020 WL 5038006 (S.D.N.Y. Aug. 26, 2020) | Defendant | Denied | Denied |
| *United States v. Lopez* | No. 10-CR-798-S2-L (PAC), 2021 WL 2821149 (S.D.N.Y. July 7, 2021) | Defendant | Denied | Denied |
| *United States v. Agostini* | No. 00-CR-237 (VM), 2020 WL 6047362 (S.D.N.Y. Oct. 13, 2020) | Defendant | Denied | Denied |
| *United States v. Lajara* | No. 00-CR-216 (JSR), 2021 WL 4267655 (S.D.N.Y. Sept. 18, 2021) | Defendant | Denied | Denied |
| *United States v. Brown* | No. 18-CR-339-3 (PAC), 2021 WL 5233506 (S.D.N.Y. Nov. 10, 2021) | Defendant | Denied | Denied |
| *United States v. Bailey* | No. 97-CR-269 (DLC), 2021 WL 4942954 (S.D.N.Y. Oct. 22, 2021) | Defendant | Denied | Denied |
| *United States v. Rodriguez* | No. 18-CR-285 (PKC), 2021 WL 75672 (S.D.N.Y. Jan. 8, 2021) | Defendant | Denied | Denied |

| Case | Citation | Motion Origin | BOP Action[1] | Result of Motion |
|------|----------|---------------|---------------|------------------|
| *United States v. Spaulding* | No. 16-CR-851 (VSB), 2020 WL 5089441 (S.D.N.Y. Aug. 27, 2020) | Defendant | Denied | Denied |
| *United States v. Simon* | No. 18-CR-339-1 (PAC), 2022 WL 17414349 (S.D.N.Y. Dec. 5, 2022) | Defendant | Denied | Denied |
| *Speed v. United States* | No. 04-CR-336 (PKC), 2021 WL 1085360 (S.D.N.Y. Mar. 22, 2021) | Defendant | Denied | Denied |
| *United States v. Spiegelman* | No. 20-CR-609 (JPC), 2022 WL 3644370 (S.D.N.Y. Aug. 24, 2022) | Defendant | Denied | Denied |
| *United States v. Dodaj* | No. 17-CR-219 (VSB), 2021 WL 2414854 (S.D.N.Y. June 11, 2021) | Defendant | Denied | Denied |
| *United States v. Yaroshenko* | No. 09-CR-524 (JSR), 2021 WL 4267812 (S.D.N.Y. Sept. 18, 2021) | Defendant | Denied | Denied |
| *United States v. Van Manen* | No. 18-CR-30-3 (PAC), 2022 WL 842989 (S.D.N.Y. Mar. 22, 2022) | Defendant | Denied | Denied |
| *United States v. Mejia* | No. 18-CR-557 (VSB), 2021 WL 2554593 (S.D.N.Y. June 22, 2021) | Defendant | Denied | Denied |
| *United States v. Petit* | No. 19-CR-850 (JSR), 2022 WL 281600 (S.D.N.Y. Jan. 31, 2022) | Defendant | Denied | Denied |
| *United States v. Luviano* | No. 11-CR-1023 (PAC), 2022 WL 4298696 (S.D.N.Y. Sept. 19, 2022) | Defendant | Denied | Denied |
| *United States v. Brown* | No. 16-CR-19 (VAB), 2020 WL 6536911 (D. Conn. Nov. 6, 2020) | Defendant | Denied | Denied |
| *United States v. Brodie* | No. 17-CR-171 (MPS), 2021 WL 1406066 (D. Conn. Apr. 14, 2021) | Defendant | Denied | Denied |
| *United States v. Davila* | No. 02-CR-258 (MPS), 2021 WL 423284 (D. Conn. Feb. 8, 2021) | Defendant | Denied | Denied |
| *United States v. Torres* | No. 16-CR-114 (VAB), 2021 WL 837436 (D. Conn. Mar. 5, 2021) | Defendant | Denied | Denied |
| *United States v. Marrero* | No. 11-CR-568 (PKC), 2020 WL 7079483 (S.D.N.Y. Dec. 3, 2020) | Defendant | Denied | Denied |
| *United States v. Rodriguez* | No. 18-CR-162 (MPS), 2020 WL 5810416 (D. Conn. Sept. 30, 2020) | Defendant | Denied | Denied |
| *United States v. Brunstorff* | No. 12-CR-4 (MPS), 2020 WL 6110961 (D. Conn. Oct. 16, 2020) | Defendant | Denied | Denied |
| *United States v. Rollins* | No. 19-CR-34-S, 11-CR-251-S (WMS), 2021 WL 5445772 (W.D.N.Y. Nov. 22, 2021) | Defendant | Denied | Denied |
| *United States v. Davila* | No. 16-CR-185 (MPS), 2020 WL 6499562 (D. Conn. Nov. 5, 2020) | Defendant | Denied | Denied |
| *United States v. Bennett* | No. 13-CR-17S-1 (WMS), 2021 WL 2410535 (W.D.N.Y. June 14, 2021) | Defendant | Denied | Denied |
| *United States v. Wilson* | No. 10-CR-363S-1 (WMS), 2021 WL 2327312 (W.D.N.Y. June 8, 2021) | Defendant | Denied | Denied |

| Case | Citation | Motion Origin | BOP Action[1] | Result of Motion |
|------|----------|---------------|---------------|------------------|
| *United States v. Giacomi* | No. 19-CR-7 (MPS), 2020 WL 7706781 (D. Conn. Dec. 29, 2020) | Defendant | Denied | Denied |
| *United States v. Scott* | No. 09-CR-341S (WKS), 2020 WL 5587122 (W.D.N.Y. Sept. 18, 2020) | Defendant | Denied | Denied |
| *United States v. Schultz* | No. 17-CR-193S (WKS), 2020 WL 2764193 (W.D.N.Y. May 28, 2020) | Defendant | Denied | Denied |
| *United States v. Quinones* | No. 13-CR-83S-1 (WKS), 2020 WL 4529365 (W.D.N.Y. Aug. 6, 2020) | Defendant | Denied | Denied |
| *United States v. Perdomo* | No. 18-CR-162 (MPS), 2021 WL 302688 (D. Conn. Jan. 29, 2021) | Defendant | Denied | Denied |
| *United States v. Koehn* | No. 10-CR-264S (WMS), 2020 WL 4361675 (W.D.N.Y. July 30, 2020) | Defendant | Denied[4] | Denied |
| *United States v. Ramirez-Vargas* | No. 13-CR-83S-8 (WMS), 2020 WL 6390077 (W.D.N.Y. Nov. 2, 2020) | Defendant | Denied | Denied |
| *United States v. Malecki* | No. 17-CR-18S (WKS), 2020 WL 4013050 (W.D.N.Y. July 16, 2020) | Defendant | Denied | Denied |
| *United States v. Rodriguez* | No. 12-CR-45S-6 (WMS), 2020 WL 4344841 (W.D.N.Y. July 29, 2020) | Defendant | Denied | Denied |
| *United States v. Rivera* | No. 13-CR-83S-6 (WMS), 2020 WL 3603045 (W.D.N.Y. July 2, 2020) | Defendant | Denied | Denied |
| *United States v. Gonzalez* | No. 09-CR-127 (SRU), 2021 WL 681142 (D. Conn. Feb. 22, 2021), reconsideration denied, No. 09-CR-127 (SRU), 2022 WL 2159886 (D. Conn. June 15, 2022) | Defendant | Denied | Denied |
| *United States v. Black* | No. 12-CR-103S-2 (WMS), 2020 WL 4192243 (W.D.N.Y. July 21, 2020) | Defendant | Denied | Denied |
| *United States v. DeBerry* | No. 16-CR-142S (WMS), 2020 WL 7395356 (W.D.N.Y. Dec. 17, 2020) | Defendant | Denied | Denied |
| *United States v. Leigh-James* | No. 15-CR-188 (SRU), 2020 WL 4003566 (D. Conn. July 15, 2020) | Defendant | Denied | Denied |
| *United States v. Rosado* | No. 14-CR-162 (VLB), 2021 WL 431474 (D. Conn. Feb. 8, 2021) | Defendant | Denied | Denied |
| *United States v. Saunders* | No. 19-CR-167 (VLB), 2020 WL 6507389 (D. Conn. Nov. 5, 2020) | Defendant | Denied | Denied |
| *United States v. Morales* | No. 94-CR-112 (SRU), 2020 WL 4926609 (D. Conn. Aug. 20, 2020) | Defendant | Denied | Denied |
| *United States v. Castillo* | 545 F. Supp. 3d 104 (S.D.N.Y. 2021) | Defendant | Denied | Denied |
| *United States v. Pena* | No. 10-CR-905 (LTS), 2020 WL 6131254 (S.D.N.Y. Oct. 19, 2020) | Defendant | Denied | Denied |
| *United States v. Canales* | No. 16-CR-212 (LAK), 2020 WL 2319294 (S.D.N.Y. May 9, 2020) | Defendant | Denied | Denied |
| *United States v. Ferguson* | No. 19-CR-173 (MPS), 2021 WL 1105228 (D. Conn. Mar. 23, 2021) | Defendant | Denied | Denied |

| Case | Citation | Motion Origin | BOP Action[1] | Result of Motion |
|---|---|---|---|---|
| *United States v. Medina* | No. 02-CR-1243 (DLI), 2022 WL 875101 (E.D.N.Y. Mar. 24, 2022) | Defendant | Denied | Denied |
| *United States v. Peralta Fernandez* | No. 15-CR-599-5 (RA), 2021 WL 5304320 (S.D.N.Y. Nov. 15, 2021) | Defendant | Denied | Denied |
| *United States v. Valentin* | No. 14-CR-55-1(VLB), 2021 WL 431471 (D. Conn. Feb. 8, 2021) | Defendant | Denied | Denied |
| *United States v. Moore* | No. 18-CR-167 (KMW), 2020 WL 3428107 (S.D.N.Y. June 23, 2020), aff'd, 858 Fed. Appx. 402 (2d Cir. 2021) (summary order) | Defendant | Denied | Denied |
| *United States v. Adams* | No. 16-CR-86 (VLB), 2020 WL 3026458 (D. Conn. June 4, 2020) | Defendant | Denied | Denied |
| *United States v. Evans* | No. 18-CR-22-15 (VLB), 2020 WL 6747881 (D. Conn. Nov. 17, 2020) | Defendant | Denied | Denied |
| *United States v. Gregor* | No. 19-CR-64-11 (VLB), 2021 WL 917117 (D. Conn. Mar. 10, 2021) | Defendant | Denied | Denied |
| *United States v. Delgado* | 582 F. Supp. 3d 136 (S.D.N.Y. 2022) | Defendant | Denied | Denied |
| *United States v. Raposo* | No. 98-CR-185 (JPC), 2023 WL 142786 (S.D.N.Y. Jan. 10, 2023) | Defendant | Denied | Denied |
| *United States v. Gutierrez* | No. 16-CR-114 (VAB), 2020 WL 6260654 (D. Conn. Oct. 23, 2020) | Defendant | Denied | Denied |
| *United States v. McCutcheon* | No. 14-CR-26S-1 (WMS), 2021 WL 732693 (W.D.N.Y. Feb. 25, 2021) | Defendant | Denied | Denied |
| United States v. Spruill | No. 18-CR-219 (E.D.N.Y. [Order Date] Nov. 12, 2021) (Court Docket Only) | Defendant | Denied | Denied |
| United States v. Vela | No. 16-CR-660 (E.D.N.Y. [Order Date] Jan. 4, 2021) (Court Docket Only) | Defendant | Denied | Denied |
| United States v. Doumas | No. 13-CR-120 (E.D.N.Y. [Order Date] June 16, 2020) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Johnson* | No. 15-CR-603 (E.D.N.Y. [Order Date] May 15, 2020) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Fleming* | No. 18-CR-197 (E.D.N.Y. [Order Date] Sept. 11, 2020) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Williams* | No. 19-CR-5 (E.D.N.Y. [Order Date] Mar. 22, 2021) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Beckett* | No. 20-CR-213 (E.D.N.Y. [Order Date] July 19, 2022) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Grubisich* | No. 19-CR-102 (E.D.N.Y. [Order Date] Sept. 21, 2022) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Sessa* | No. 92-CR-351 (E.D.N.Y. [Order Date] July 14, 2020) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Wang* | No. 18-CR-302 (E.D.N.Y. [Order Date] Aug. 24, 2021) (Court Docket Only) | Defendant | Denied | Denied |

| Case | Citation | Motion Origin | BOP Action[1] | Result of Motion |
|------|----------|---------------|---------------|------------------|
| *United States v. Santiago* | No. 92-CR-563 (E.D.N.Y. [Order Date] Aug. 20, 2020) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Ponce* | No. 12-CR-63 (E.D.N.Y. [Order Date] May 11, 2021) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Dicarluccio* | No. 98-CR-594 (E.D.N.Y. [Order Date] Feb. 24, 2021) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Mateo* | No. 17-390 (E.D.N.Y. [Order Date] Aug. 7, 2020) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Vailes* | No. 16-CR-297 (E.D.N.Y. [Order Date] Jun. 10, 2020) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Moglia* | No. 12-CR-735 (E.D.N.Y. [Order Date] July 6, 2020) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Mukumov* | No. 19-CR-223 (E.D.N.Y. [Order Date] Feb. 15, 2023) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Delutro* | No. 08-CR-559 (E.D.N.Y. [Order Date] Mar. 10, 2021) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Gioeli* | No. 08-CR-240 (E.D.N.Y. [Order Date] Mar. 22, 2022) (Court Docket Only) | Defendant | Denied | Denied |
| *United States v. Sam* | No. 16-CR-21 (E.D.N.Y. [Under Consideration]) (Court Docket Only) | Defendant | Denied | Under Consideration |
| *United States v. Reiter* | No. 87-CR-132 (VSB), 2020 WL 4252681 (S.D.N.Y. July 23, 2020) | Defendant | Denied (alleged) | Denied |
| *United States v. Harris* | No. 16-CR-851 (VSB), 2020 WL 4699044 (S.D.N.Y. Aug. 12, 2020) | Defendant | Denied (alleged) | Denied |
| *United States v. Hernandez* | No. 19-CR-360 (KMW), 2023 WL 371403 (S.D.N.Y. Jan. 24, 2023) | Defendant | Denied (alleged) | Denied |
| *United States v. Thrower* | 495 F. Supp. 3d 132 (E.D.N.Y. 2020) | Defendant | Responded, unclear if a denial or acknowledgement of receipt | Granted |
| *United States v. Reid* | No. 05-CR-596-1 (ARR), 2021 WL 837321 (E.D.N.Y. Mar. 5, 2021) | Defendant | Did not respond | Granted |
| *United States v. Rivera-Amaro* | No. 18-CR-183 (EAW), 2020 WL 3000392 (W.D.N.Y. June 4, 2020) | Defendant | Did not respond | Granted |
| *United States v. Epps* | No. 18-CR-19 (JBA), 2020 WL 7332854 (D. Conn. Dec. 14, 2020) | Defendant | Did not respond | Granted |
| *United States v. Barraza Payan* | No. 18-CR-422 (KPF), 2022 WL 17757779 (S.D.N.Y. Dec. 19, 2022) | Defendant | Did not respond | Granted |
| *United States v. Phillips* | 469 F. Supp. 3d 180 (S.D.N.Y. 2020) | Defendant | Did not respond | Granted |
| *United States v. Rodriguez* | No. 05-CR-960 (JPO), 2022 WL 158685 (S.D.N.Y. Jan. 18, 2022) | Defendant | Did not respond | Granted |
| *United States v. Austin* | 468 F. Supp. 3d 641 (S.D.N.Y. 2020) | Defendant | Did not respond | Granted |

| Case | Citation | Motion Origin | BOP Action[1] | Result of Motion |
|---|---|---|---|---|
| *United States v. Hancock* | No. 12-CR-15 (VAB), 2021 WL 71451 (D. Conn. Jan. 8, 2021) | Defendant | Did not respond | Granted |
| *United States v. Smith* | 454 F. Supp. 3d 310 (S.D.N.Y. 2020) | Defendant | Did not respond | Granted |
| *United States v. Flores* | 465 F. Supp. 3d 251 (W.D.N.Y. 2020) | Defendant | Did not respond | Granted |
| *United States v. Valencia-Lopez* | No. 05-CR-841 (E.D.N.Y. [Order Date] Feb. 3, 2022) (Court Docket Only) | Defendant | Did not respond | Granted |
| *United States v. Hinton* | No. 17-CR-432 (E.D.N.Y. [Order Date] May 12, 2020) (Court Docket Only) | Defendant | Did not respond | Granted |
| *United States v. Davis* | No. 96-CR-912 (E.D.N.Y. [Order Date] Nov. 16, 2020) (Court Docket Only) | Defendant | Did not respond | Granted |
| *United States v. Vondette* | No. 97-CR-1010 (E.D.N.Y. [Order Date] Dec. 17, 2020) (Court Docket Only) | Defendant | Did not respond | Granted |
| *United States v. DiSano* | No. 18-CR-337 (E.D.N.Y. [Order Date] Sept. 4, 2020) (Court Docket Only) | Defendant | Did not respond | Granted |
| *United States v. Blair* | No. 10-CR-696 (E.D.N.Y. [Order Date] Dec. 30, 2020) (Court Docket Only) | Defendant | Did not respond | Granted |
| *United States v. Gonzalez* | No. 00-CR-54 (JFK), 2021 WL 2433817 (S.D.N.Y. June 15, 2021) | Defendant | Did not respond | Denied |
| *United States v. Santiago-Almonte* | 537 F. Supp. 3d 472 (W.D.N.Y. 2021) | Defendant | Did not respond | Denied |
| *United States v. Montanez* | 458 F. Supp. 3d 146 (W.D.N.Y. 2020) | Defendant | Did not respond | Denied |
| *United States v. Myrick* | No. 12-CR-385 (ARR), 2020 WL 6128943 (E.D.N.Y. Oct. 19, 2020) | Defendant | Did not respond | Denied |
| *United States v. Nnawuba* | No. 18-CR-117-6 (KPF), 2022 WL 1322207 (S.D.N.Y. May 3, 2022) | Defendant | Did not respond | Denied |
| *White v. United States* | No. 13-CR-255S-1 (WMS), 2022 WL 4244219 (W.D.N.Y. Sept. 15, 2022) | Defendant | Did not respond | Denied |
| *United States v. Plummer* | No. 15-CR-95 (AJN), 2020 WL 3440548 (S.D.N.Y. June 23, 2020) | Defendant | Did not respond | Denied |
| *United States v. Moss* | No. 21-CR-600 (LJL), 2022 WL 2802702 (S.D.N.Y. July 15, 2022) | Defendant | Did not respond | Denied |
| *United States v. McKay* | No. 18-CR-339-7 (PAC), 2021 WL 807108 (S.D.N.Y. Mar. 3, 2021) | Defendant | Did not respond | Denied |
| *United States v. Mizell* | No. 14-CR-212 (RJS), 2021 WL 798099 (S.D.N.Y. Mar. 1, 2021) | Defendant | Did not respond | Denied |
| *United States v. Goldstein* | No. 18-CR-217 (KMW), 2023 WL 243229 (S.D.N.Y. Jan. 18, 2023) | Defendant | Did not respond | Denied |
| *United States v. Stewart* | No. 10-CR-239S-5 (WMS), 2021 WL 248006 (W.D.N.Y. Jan. 26, 2021) | Defendant | Did not respond | Denied |

| Case | Citation | Motion Origin | BOP Action[1] | Result of Motion |
|------|----------|---------------|---------------|------------------|
| *United States v. Roney* | No. 10-CR-130S (WMS), 2020 WL 2846946 (W.D.N.Y. June 2, 2020), aff'd, 833 Fed. Appx. 850 (2d Cir. 2020) (summary order) | Defendant | Did not respond | Denied |
| *United States v. Murph* | No. 08-CR-322 (JMA), 2020 WL 3256364 (E.D.N.Y. June 16, 2020) | Defendant | Did not respond | Denied |
| *United States v. Pena* | No. 18-CR-640 (RA), 2021 WL 396420 (S.D.N.Y. Feb. 4, 2021) | Defendant | Did not respond | Denied |
| *United States v. Bayfield* | No. 14-CR-356 (ENV), 2020 WL 2615937 (E.D.N.Y. May 21, 2020) | Defendant | Did not respond | Denied |
| *United States v. White* | No. 17-CR-431 (RMB), 2020 WL 3545513 (S.D.N.Y. June 29, 2020) | Defendant | Did not respond | Denied |
| *United States v. McIntosh* | No. 12-CR-72 (ER), 2021 WL 1660682 (S.D.N.Y. Apr. 28, 2021) | Defendant | Did not respond | Denied |
| United States v. Isaacson | No. 15-CR-402 (E.D.N.Y. [Order Date] July 8, 2020) (Court Docket Only) | Defendant | Did not respond | Denied |
| United States v. Quadar | No. 00-CR-603 (E.D.N.Y. [Order Date] May 20, 2020) (Court Docket Only) | Defendant | Did not respond | Denied |
| United States v. Ellis | No. 96-CR-100 (E.D.N.Y. [Order Date] Sept. 29, 2020) (Court Docket Only) | Defendant | Did not respond | Denied |
| United States v. Gass | No. 19-CR-22 (E.D.N.Y. [Order Date] Aug. 4, 2020) (Court Docket Only) | Defendant | Did not respond | Denied |
| *United States v. Cutaia* | No. 10-CR-10 (E.D.N.Y. [Order Date] May 12, 2022) (Court Docket Only) | Defendant | Did not respond | Denied |
| *United States v. Callahan* | No. 13-CR-453 (E.D.N.Y. [Order Date] Sept. 23, 2020) (Court Docket Only) | Defendant | Did not respond | Denied |
| *United States v. Casseus* | No. 06-CR-832 (E.D.N.Y. [Under Consideration]) (Court Docket Only) | Defendant | Did not respond | Under Consideration |
| *United States v. Fabian* | No. 16-CR-131 (E.D.N.Y. [Under Consideration]) (Court Docket Only) | Defendant | Did not respond | Under Consideration |
| *United States v. Dickerson* | No. 10-CR-227 (JAM), 2020 WL 4915561 (D. Conn. Aug. 21, 2020) | Defendant | Did not respond (alleged) | Granted |
| *United States v. Johnson* | No. 10-CR-431 (CM), 2021 WL 1222234 (S.D.N.Y. Apr. 1, 2021), aff'd sub nom. *United States v. English*, No. 21-940-CR, 2022 WL 16984529 (2d Cir. Nov. 17, 2022) | Defendant | Did not respond (alleged) | Denied |
| *United States v. Zubiate* | No. 18-CR-442 (AJN), 2020 WL 3127881 (S.D.N.Y. June 12, 2020) | Defendant | Did not respond (alleged) | Denied |
| *United States v. Rawlins* | No. 15-CR-377 (AJN), 2022 WL 17716834 (S.D.N.Y. Dec. 15, 2022) | Defendant | Did not respond (alleged) | Denied |
| *United States v. Resnick* | 451 F. Supp. 3d 262 (S.D.N.Y. 2020) | Defendant | Did not respond & Denied | Granted |
| *United States v. Israel* | No. 05-CR-1039 (CM), 2019 WL 6702522 (S.D.N.Y. Dec. 9, 2019) | Defendant | Did not respond & Denied | Denied |
| *United States v. Day* | 473 F. Supp. 3d 209 (W.D.N.Y. 2020) | Defendant | Did not respond & Denied | Denied |

| Case | Citation | Motion Origin | BOP Action[1] | Result of Motion |
|------|----------|---------------|---------------|------------------|
| *United States v. Edwards* | No. 18-CR-490 (PAC), 2021 WL 2709203 (S.D.N.Y. July 1, 2021) | Defendant | Did not respond & Denied | Denied |
| *United States v. Jaquez* | No. 17-CR-415 (PAC), 2021 WL 857364 (S.D.N.Y. Mar. 8, 2021) | Defendant | Did not respond & Denied[5] | Denied |

[1] Where a defendant received an initial denial from the BOP but did not appeal administratively before bringing a First Step Act motion, some courts have held that administrative remedies were not fully exhausted. However, courts within this Circuit have frequently found an initial denial from the BOP to be sufficient for administrative exhaustion, *see, e.g.*, *United States v. Brown*, No. 15-CR-551 (ENV), 2021 WL 1062401, at *1 n. 1 (E.D.N.Y. Mar. 18, 2021); *United States v. Ebbers*, 432 F. Supp. 3d 421, 431 (S.D.N.Y. 2020). Many have also found administrative exhaustion 30 days after the defendant submitted their request to the BOP, *see, e.g.*, *United States v. Garcia*, 505 F. Supp. 3d 328, 331 (S.D.N.Y. 2020), or have waived the exhaustion requirement in such cases. *See, e.g.*, *United States v. Bess*, 455 F. Supp. 3d 53, 63 (W.D.N.Y. 2020); *United States v. Kissi*, 469 F. Supp. 3d 21, 32 (E.D.N.Y. 2020). For the purposes of this analysis, whether the court ultimately determined that all administrative remedies had been exhausted is immaterial. Rather, the court is interested solely in what action BOP took when presented with the opportunity to evaluate a defendant's request for compassionate release.

[2] Williams argued that he "applied for and [has] effectively been denied relief from the Bureau of Prisons for the purposes of the exhaustion requirement because he has an existing state detainer and the Bureau of Prisons has made clear that individuals with state detainers are ineligible for reduction in sentence." *Williams*, 456 F. Supp. at 419. However, the Government "[did] not disagree that the exhaustion requirement [had] been met." *Id.* The court proceeded to grant Williams' motion on the merits. *Id.*

[3] Jepsen was designated to a non-BOP facility. *Jepsen*, 451 F. Supp. at 244-45. Both the Warden at that facility and the BOP refused to consider Jepsen's compassionate release request, arguing that compassionate release was available only to inmates designated to BOP facilities. *Id.*

[4] Koehn asserted that he had submitted two requests. He alleged that his first request was returned to him due to a missing signature and his second request was returned to him because he had allegedly not used the proper form. The Government claimed that his second request was not received. The court found Koehn's second submission to be a "valid administrative request." *Koehn*, 2020 WL 4361675, at *4.

[5] Jaquez claimed that he never received a response to his request at all, while the Government claimed that the BOP denied his request after the 30-day waiting period had passed. The court declined to decide this factual issue, finding that exhaustion had been met in either scenario. *Jaquez*, 2021 WL 857364, at *2 n. 5.